In the Matter of the Arbitration between
**LEA TAI TEXTILE CO., LTD., Petitioner,**

v.

**MANNING FABRICS, INC., Respondent.**

**No. 75 Civ. 2646.**

United States District Court,
S. D. New York.

Nov. 7, 1975.

Dunn & Zuckerman, P.C., New York City, for petitioner, by Morton Zuckerman, New York City, of counsel.

Otterbourg, Steindler, Houston & Rosen, P.C., New York City, for respondent, by Francis R. Jones, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

This petition to compel arbitration and to stay a pending state court action is brought under diversity jurisdiction, 28 U.S.C. § 1332, and the Federal Arbitration Act (the "Act"), 9 U.S.C. § 4. Petitioner, Lea Tai Textiles, Ltd. ("Lea Tai"), is a corporation organized under the laws of Hong Kong where it has its principal place of business. Respondent, Manning Fabrics, Inc. ("Manning"), is a New York corporation with its principal place of business in St. Pauls, North Carolina. The amount in controversy well exceeds the jurisdictional minimum for diversity purposes.

From November 1973 to April 1974, the parties entered into a series of contracts for the sale of cotton cloth. Manning would send a purchase order from its New York office to Lea Tai in Hong Kong. Lea Tai, in turn, mailed confirmations to Manning. In September of 1974, Lea Tai shipped 400,-000 yards of cotton duck and 120,000 yards of cotton sateen to Manning. Lea Tai alleges that due to changing market conditions Manning wrongfully refused to accept the goods. Manning argues that after an August, 1974 shipment of defective goods it instructed Lea Tai to cease further shipments.

Manning filed suit in the Court of Common Pleas, State of South Carolina, on October 31, 1974. Lea Tai seeks to stay this suit and compel arbitration in New York. Manning contends that no agreement to arbitrate was ever made.

The Act provides that a party aggrieved by another's failure to arbitrate may petition a United States District Court to compel arbitration, 9 U.S.C. § 4. "If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." *Id.* Although the existence of the arbitration agreement is in dispute, the essential facts are not and thus the matter can be disposed of without plenary hearing.

In determining the validity of a contract to arbitrate, the Court of Appeals for this Circuit has consistently held that federal rather than state law controls. *Robert Lawrence Company v. Devonshire Fabrics, Inc.*, 271 F.2d 402 (2d Cir.), *cert. granted,* 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, *dismissed*, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960); *Coenen v. R. W. Pressprich & Co.*, 453 F.2d 1209 (2d Cir.), *cert. denied*, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972).

In the context of this case the conflicts of law inquiry is more of an academic pursuit. Although Congress did not substitute the Uniform Commercial Code ("U.C. C.") for the federal common law of contracts, the Code is nevertheless "a most appropriate source of federal law." *In re Yale Express Systems, Inc.*, 370 F.2d 433, 437 (2d Cir. 1966). As Judge H. Friendly put it in *United States v. Wegematic, Inc.*, 360 F.2d 674, 676 (2d Cir. 1966):

"We find persuasive the defendant's suggestion of looking to the Uniform Commercial Code as a source for the 'federal' law of sales. The Code has been adopted by Congress for the District of Columbia, 77 Stat. 630 (1963), has been enacted in over forty states, and is thus well on its way to becoming a truly national law of commerce, which, as Judge L. Hand said of the Negotiable Instruments Law, is 'more complete and more certain, than any other which can conceivably be drawn from those sources of "general law" to which we were accustomed to resort in the days of *Swift v. Tyson* [16 Pet. 1, 41 U.S. 1, 10 L.Ed. 865].' *New York, N.H. & H. R. Co. v. Reconstruction Finance Corp.*, 180 F.2d 241, 244 (2 Cir. 1950). When the states have gone so far in achieving the desirable goal of a uniform law governing commercial transactions, it would be a distinct disservice to insist on a different one for the segment of commerce, important but still small in relation to the total, consisting of transactions with the United States."

This reasoning applies with equal force to questions of contract formation arising in cases under the Federal Arbitration Act.

■ Turning to the existence of a contract to arbitrate, I am faced with the not uncommon exchange of inconsistent forms between a buyer and a seller. Both parties apparently concede the existence of a series of valid contracts for the sale of goods, they argue whether an arbitration clause was made a part thereof. Manning's order form under which Lea Tai seeks to compel arbitration provides as follows:

"11. ARBITRATION: Any controversy arising out of or relating to this contract shall be settled by arbitration in the City of New York in accordance with the Rules then obtaining of the American Arbitration Association or the General Arbitration Counsel [sic] of the Textile Industry, whichever shall be first selected by the party instituting the arbitration. The Arbitrator sitting in any such controversy shall have no power to alter or modify any express provision of this contract or to render any award which by its terms effects any such alteration or modification. The parties consent to the jurisdiction of the Supreme Court of the State of New York and the United States District Court for the Southern District of New York for all purposes in connection with said arbitration. The parties further consent that any process or notice of motion or other application to either of said Courts, or a Judge thereof, may be served outside the State or Southern District of New York by registered mail or by personal service provided a reasonable time for appearance is allowed, or in such manner as may be permissible under the Rules of said Court."

Lea Tai's confirmation form, labeled a "contract," contains an arbitration clause different from Manning's:

"12. ARBITRATION. No disputes of any nature between Buyers and Sellers shall entitle the Buyers to defer and/or delay to take delivery of the cargo within the time stipulated in this Contract. Should any dispute arise between the Buyers and the Sellers in relation to this Contract which they are unable themselves to settle the same shall be referred to the arbitration of two arbitrators; one to be appointed by the Sellers and the other by the Buyers, and the provisions of the Hong Kong Code of Civil Procedure as to a reference to two arbitrators shall apply."

Thus, the parties now seek me to decide whether they agreed to arbitrate and if so which clause controls.

U.C.C. § 2–207(1) provides that a confirmation may operate as an acceptance even though its terms differ from that of the offer:

"A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms."

Subdivision 2 outlines the effect of the conflicting term:

"The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; * or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received."

---

* There is a difference of opinion on the question of whether the inclusion of an arbitration clause in an acceptance is a *per se* material alteration of the offer. *Compare Matter of Doughboy Industries, Inc.,* 17 A.D.2d 216, 223, 233 N.Y.S.2d 488, 495–96 (1st Dep't 1962)

(Brietel, J.) with *Dorton v. Collins & Aikman Corp.,* 453 F.2d 1161, 1169 (6th Cir. 1972); In re Wolfkill Feed & Fertilizer Corp., New York Law Journal, May 16, 1975 at 16 (Sup.Ct., New York County).

The Official Comment to the section clearly indicates that a conflicting clause is to be considered as a notification of objection for the purposes of U.C.C. § 2–207(2)(c):

> "Where clauses on confirming forms sent by both parties conflict each party must be assumed to object to a clause of the other conflicting with one on the confirmation sent by himself. As a result the requirement that there be notice of objection which is found in subsection (2) is satisfied and the conflicting terms do not become a part of the contract. The contract then consists of the terms originally expressly agreed to, terms on which the confirmations agree, and terms supplied by this Act, including subsection (2)."

It still must be resolved whether the conflicting "terms" are merely the mode and venue of arbitration or whether the conflict involves the entire clauses. U.C.C. § 1–201(42) defines "term" as "that portion of an agreement which relates to a particular matter." Thus, it is "broader than a particular word, and embraces anything in the agreement dealing with the subject matter in question." 1 R. Anderson, Uniform Commercial Code § 1–201:130 (1970). Since the arbitration clauses are in hopeless conflict, I find that no contract to arbitrate was made.

■ This result suggested by the U.C.C. has a solid basis in logic and reason. While there is a strong federal policy favoring arbitration, *Demsey & Associates, Inc. v. S. S. Sea Star*, 461 F.2d 1009, 1017 (2d Cir. 1972), it remains a creature of contract. This Court will not impose its will on parties whose intentions are in clear conflict on this important issue. Arbitration under the Code of Hong Kong rather than the laws of New York may well affect important substantive rights. It is irrelevant to the issues of contract formation that the Hong Kong seller now concludes that it would be willing to arbitrate in New York.

Manning further argues that Lea Tai's alleged participation in the South Carolina law suit for over seven months prior to filing this petition constitutes a waiver of arbitration. Since I find that no contract to arbitrate was entered into, I need not consider this question. The petition is dismissed and the stay denied.

SO ORDERED.